COLFAX COUNTY BANK, APPELLEE, V. EMIL KONVALIN ET AL., APPELLANTS.

FILED JUNE 26, 1928. No. 26067.

*M. F. Harrington* and *Clifford B. Scott,* for appellants.

*Douglas Cones* and *M. H. Leamy, contra.*

Heard before ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and BEGLEY and REDICK, District Judges.

BEGLEY, District Judge.

This is a creditor's bill brought by Colfax County Bank against Frank Konvalin, Anna Konvalin, his wife, and Emil Konvalin and Agnes Konvalin, his wife, to set aside as fraudulent a certain conveyance of real estate in Pierce county, Nebraska, executed by Frank Konvalin and wife to Emil Konvalin. Frank Konvalin died before the trial of suit and the action proceeded against the other three defendants. Trial resulted in a decree setting aside the deed as prayed, and Emil Konvalin and Agnes Konvalin, his wife, have appealed.

On April 18, 1924, Frank Konvalin and Anna Konvalin, his wife, conveyed 240 acres of land in Pierce county, worth approximately $30,000, subject to a mortgage of $7,690, to his son Emil Konvalin. At said time said Frank

Konvalin was surety on a note for $8,169.57, given by his son Charles to plaintiff bank, all of which was known to the parties to said deed. On September 22, 1924, the plaintiff brought suit on said note in Stanton county, and thereafter recovered a judgment and caused a transcript of same to be filed in Pierce county, and, after issuance of execution and its return unsatisfied, filed this creditor's bill to have said deed set aside on the ground of fraud. Defendants Emil Konvalin and Agnes Konvalin in their answer claim that the property was conveyed to Emil in good faith and for a valid and adequate consideration of a past-due debt in the sum of upward of $23,000, and an agreement for future support of the grantors.

Frank Konvalin, grantor, was made a party defendant to the suit, but died before issue made up. In the trial a controversy arose as to who was the personal representative of said Frank Konvalin, deceased. The lower court permitted Emil to testify as to conversations with his deceased father, but in answer to a special written interrogatory at the close of the case held that he was incompetent to testify, and, if competent, the court was not satisfied that his testimony as to such conversations and transactions was true. Section 8836, Comp. St. 1922, has been construed many times by this court to mean that a personal representative is one that has succeeded to the rights of the deceased, either by purchase, descent, or operation of law. Here the defendant grantee claimed to succeed to the rights of the grantor by purchase. He was sued jointly with his grantor. Whatever rights Frank Konvalin had for transferring his property to his son Emil, or for withholding it from the plaintiff, his said son now has. He is, therefore, the representative of his father in this case and his testimony as to transactions and conversations with his deceased father was competent. *Holladay v. Rich*, 93 Neb. 491. The case of *Adler & Sons Clothing Co. v. Hellman*, 55 Neb. 266, relied upon by appellee, is easily distinguished from the case at bar. In that case the grantee was also executrix of the deceased's estate.

Under section 1329, Comp. St. 1922, it is the duty of the executrix to bring an action. She refused and the creditor brought it in her stead. It was held that the creditor occupied the position of the executrix in the suit and as to them the claim of defendant was adverse and she was not permitted to testify by reason of her refusal to carry out her duty as executrix. No such situation confronts us in this case.

This brings us to the important and controlling question in the case: Was the transfer made in good faith and for a valuable consideration? The facts surrounding the conveyance of land between relatives will be closely scrutinized where fraud is charged, to discover if the conveyance was made for the purpose of hindering, delaying or defrauding creditors. This rule was recognized by the defendants in the lower court and they assumed the burden of proof. Emil contends that, at the time of the transfer herein and as part of the consideration therefor, his father owed him $7,200 commission for negotiating the exchange of Boone county land for Dodge county land in 1915, and for commissions for negotiating the exchanging of the Dodge county land for the Pierce county land, by reason of an oral agreement with his father made at or before the time of each of said exchanges. His uncorroborated evidence on these matters, the staleness of the claim, the family relationship, and the peculiar circumstances surrounding the same are insufficient to carry the burden of proof which he assumed. He further contends that his father was owing him an additional sum of $14,295, by reason of money loaned to his father, taxes paid and improvements erected on the Pierce county land during the period from 1918 to 1923, on the express agreement of his father to repay the same. His testimony in this case shows that he, his wife and family, and his father and mother occupied the premises as one family, and lived upon the produce therefrom; that he had no specific agreement with his father to retain the proceeds of the land, convert them into money and loan same to his father, or

that he had any other income from which to secure money. He fails to account for the proceeds from the premises during this period or to prove any agreement absolving him from the payment of rent for same. The only agreement which he claims was that made in 1910 when he, as a boy of 18 years, took over the management of the farm to pay off the debts, and his testimony as to that arrangement is vague and unsatisfactory. After 1915 the debts seem to have all been paid, and whatever moneys he paid to or on behalf of his father were moneys derived from the income from the farm, and therefore belonged to the father, and not to defendant. Likewise, the improvements and repairs put upon the farm were made with money earned upon the farm. The claim of Emil in this regard is also inconsistent with the acts of the father. His father always claimed ownership of the farm and stock and equipment. There is evidence that on signing plaintiff's note he stated in the presence of Emil that he owed only $6,000 and intended selling farm in payment of debts and dividing the remainder among his children. In 1921 his father gave Emil the sum of $6,000 and raised the amount by a mortgage upon the farm. In his financial statement furnished the mortgage company he stated that he owed only the sum of $6,000, and owned all of the stock and machinery on the place. This was a circumstance to show the grantor's fraudulent intent in this action. *Leach v. Edgerton*, 203 Ia. 512.

The agreement to furnish support for the grantor and his wife seems not to have been carried out. The mother now lives with a daughter, and the only support furnished was the sum of $25. The grantee seems also to have acquired the proceeds of a certain insurance policy upon the life of his deceased father, which was previously held in the name of his mother as beneficiary.

From a reading of the testimony we are convinced that the defendants have failed to sustain the burden of proof by showing that this transfer was made in good faith and for a valuable consideration. The evidence indicates that

it was made with knowledge of plaintiff's debt and for the purpose of hindering and defrauding the plaintiff in the collection of its judgment. The decree of the trial court is therefore AFFIRMED.