**ANDERSON v. BENSON et al.**
Civ. No. 37–52.

United States District Court,
D. Nebraska, Omaha Division.
Dec. 30, 1953.

Kennedy, Holland, DeLacy & Svoboda (Edward A. Mullery and Y. C. Holland), Omaha, Neb., and John A. McKenzie, Omaha, Neb., for plaintiff.

· Brown, Crossman, West, Barton & Quinlan, Omaha, Neb., Raymond M. Crossman, Omaha, Neb., and Harvey R. Ellenberger, Tekamah, Neb., for defendants Anna Benson, Mary Frances Medley, Annabelle Lee Benson, Lennea Josephine Moore, Vivian Arlene Logan, Benjamin F. Benson and Oscar Leroy Benson.

DONOHOE, Chief Judge.

Plaintiff, Hannah Anderson, has instituted this action to establish a contract between herself and her deceased husband, Swen Anderson, to make mutual and reciprocal wills and to enforce a claim to, and remove a cloud upon, the following described real and personal property:

1) The East Half of the Southwest Quarter of Section 28, Township 24, Range 9, East of the 6th P. M. in Thurston County, Nebraska;

2) A Certificate of deposit issued to Swen Anderson and now in plaintiff's

possession, representing a $10,000 deposit in the Citizens State Bank of Decatur, Nebraska;

3) A bank account in the name of Swen Anderson in the Citizens State Bank of Decatur, Nebraska, in the sum of $750;

4) A 1941 Studebaker Coupe, now possessed by the plaintiff but the record title to which stands in the name of Swen Anderson; and

5) Two hundred forty-seven United States Savings Bonds, Series E, having a face value of $29,875, each of which was issued to Swen Anderson with one of the defendants named as co-owner or beneficiary; all of these bonds are in plaintiff's possession.

## Jurisdiction

1. *Diversity of Citizenship.* The amount in controversy clearly exceeds $3,000, exclusive of interest and costs. The plaintiff, Hannah Anderson, is a citizen of Nebraska. The defendants Anna Benson, Leroy Benson, Annabelle Lee Benson, Lennea Josephine Moore, Vivian Arlene Logan and Benjamin F. Benson are citizens of the State of Missouri. Mary Frances Medley, who was a citizen of Missouri at the time the action was instituted is now a citizen of Kansas. The requisite diversity of citizenship and jurisdictional amount in controversy are established and this court has jurisdiction of the subject matter. 28 U.S.C. § 1332.

2. *Effect of Nebraska Probate Proceedings.* The fact that the County Court of Douglas County, Nebraska, has duly admitted to probate a will of Swen Anderson, which is different in terms than the one plaintiff alleges her husband agreed to make, does not deprive this court of jurisdiction. While County Courts in Nebraska have exclusive jurisdiction in probate matters, Nebr.Const. Art. V, Sec. 16; R.R.S.Neb. 1943, Sec. 24–503; In re Estate of Bremer, 141 Neb. 251, 3 N.W.2d 411, and purely probate matters are not within the jurisdiction of federal courts, (See Harris v. Zion's Bank Co., 317 U.S. 447, 450, 63 S.Ct. 354, 87 L.Ed. 390; Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664), jurisdiction to enforce specifically a contract or to impress a trust upon particular property is vested in the courts of general jurisdiction in Nebraska, namely, the district courts, and not in the county (probate) courts, Sopcich v. Tangeman, 153 Neb. 506, 45 N.W.2d 478; and where an independent action between the parties may be maintained in a state court of general jurisdiction, that same action may be maintained in a federal court of that state if diversity of citizenship exists and the amount involved exceeds $3,000, exclusive of interest and costs. See Ferguson v. Patterson, 10 Cir., 1951, 191 F.2d 584.

The contention of counsel for the defendants that the judgment of the county court admitting the last will of Swen Anderson to probate deprives this court of jurisdiction and is determinative of the issues involved herein is legally untenable.

"A probate court whose jurisdiction is limited to the determination of the issue whether the instrument propounded is the last will of the decedent lacks power to enforce an agreement between two testators to make wills which are mutual and reciprocal in their provisions. The establishment of a trust for the purpose of enforcing a contract to make wills containing reciprocal provisions is not ordinarily within the jurisdiction of the probate or surrogate court. Generally speaking, the remedy of a person injured by the violation of a contract for the execution of wills containing reciprocal bequests and bequests to third persons effective upon the death of the surviving testator is not to be had in a contest of the probate of the will which constitutes the violation of which complaint is made, since, in the absence of statute the only issue on a contested probate is whether the paper propounded is 'the last will of the decedent.' * * * It is not a ground of con-

test to the probate of a will that it violates an agreement to make wills containing reciprocal provisions or revokes a former will made in pursuance of such agreements, and the probate court cannot refuse to probate a will on the ground that it was made in violation of such agreement, unless such court is, by statute given equitable jurisdiction or the probate of the will was enjoined by a court of equity. * * * As hereinafter observed, a decree probating the revoking will is not res judicata as to the issues arising under the contract." 57 Am.Jur., Wills, § 716, p. 485. See also Annotation: Joint, Mutual and Reciprocal wills, 169 A.L.R. 9, 53.

Nebraska follows the general rule stated above. In Sopcich v. Tangeman,, 153 Neb. 506, 45 N.W.2d 478, Justice Chappell pointed out:

" 'A suit in the district court to enforce the specific performance of a parol agreement to devise real property and to quiet title in the plaintiff as against those claiming under a will duly allowed and admitted to probate in the county court is not a collateral attack on the judgment admitting such will to probate.' As held in In re Estate of Skade, 135 Neb. 712, 283 N.W. 851, 852: 'The making of a will which violates unperformed obligations of testator under a valid oral contract, after full performance by the other party, does not destroy the contract.' See, also, Lacey v. Ziegler, 98 Neb. 380, 152 N.W. 792, wherein it was held: 'And when such contract and relation are established under a single and indivisible contract, and the promisor dies without having complied with the terms of his promise, the county court is without, and the district court has, jurisdiction of an action for the specific performance of such contract.' " 153 Neb. at page 510, 45 N.W.2d at page 481.

**3. *Jurisdiction in Rem; Nature and Scope.*** Counsel for the defendants contend that this court has no jurisdiction of the person and that this action should be dismissed because it is essentially in personam; and in the alternative that, if the action is treated as one in rem, the court is without power to enter any order which would require the defendants personally to take any action. Counsel for plaintiff contend that the defendants' objections to jurisdiction of their persons has been waived. The court, upon examining the record, discovers that the objection to jurisdiction of the person is found in the first pleading filed by defendants. The defendants each separately moved:

"1. That the purported service of process upon them, and each of them be quashed and that plaintiff's action be dismissed as to them, and each of them, by reason of lack of jurisdiction of the court over their persons respectively, in that service of process was sought to be obtained upon them under the provisions of Section 28 U.S.C.A., 1655, providing for service only in actions in rem, whereas it appears upon the face of the complaint that the action set forth therein is one in personam." Filing Nos. 17 and 20.

This defense was joined with other defenses which were set forth in the same motion. However, Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. specifically provides:

"No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion."

On September 8, 1952, this court, after hearing and argument, overruled the foregoing motions of the defendants. The defendants in their responsive pleadings to the merits of the case reiterated their previous objections to jurisdiction of their persons. Filing No. 23. The case was tried on its merits. It is settled that a defendant served with process under 28 U.S.C. § 1655 may proceed

under Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A., to raise a defense such as lack of jurisdiction of the person, and also contest on the merits, without waiving either the defense of lack of jurisdiction or the defense on the merits. See 2 Moore's Federal Practice (2d Ed.), § 12.12, p. 2260 et seq.

Having decided that the defendants have not waived their objections to jurisdiction of their persons the court must now determine what, if any, merit is contained in their objections. Section 1655, of Title 28 U.S.C. provides:

> "In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

> "Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

> "If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. * * *"

Upon commencement of the action, the court entered an order directing the defendants to appear and plead on or before May 31, 1952; and further directing that a certified copy of such order and a copy of the complaint be served upon each of the defendants personally wherever found before May 10, 1952. All of the defendants were personally served outside the district of Nebraska in full compliance with this order prior to May 10, 1952. At this stage of the proceeding the court acquired jurisdiction *in rem* to determine the status of all the property which is the subject of this action. All of the property is in the possession of the plaintiff and is within the territorial jurisdiction of this court. An action to impress a trust upon certain property or to enforce a trust of such property is *in rem*, or at least quasi in rem within the contemplation of Section 1655 of Title 28 U.S.C. See Goodman v. Niblack, 102 U.S. 566, 26 L.Ed. 229; Williams v. Williams, 7 Cir., 1932, 61 F.2d 257; Kelleam v. Maryland Casualty Co., 10 Cir., 1940, 112 F.2d 940; 2 Moore's Federal Practice (2d Ed.), sec. 4.39, p. 1022. The basic requirements of federal jurisdiction based upon diversity of citizenship are present; and all other provisions of the statute have been complied with. See 2 Moore's Federal Practice (2d Ed.), § 4.34, p. 1007 et seq. For the reasons stated in the preceding paragraphs relating to jurisdiction the court is inclined to the view that the defendants' motions, namely:

a) to quash the service of process, and

b) to dismiss the action on the grounds that

1) there is no diversity of citizenship,

2) there is no jurisdiction of the res, and

3) there is no jurisdiction of the persons of the defendants,

are not well taken. The court has jurisdiction of the subject matter and the property, and in an action in rem, or quasi in rem, jurisdiction of the person is unnecessary. All defenses based upon these motions are likewise without merit.

Counsel for defendants also contend, however, that even though the court has jurisdiction of the res, since defendants have entered a special appearance, the court is without authority to order defendants personally to execute a transfer of the United States Savings Bonds, Series E, which form a portion of the

property involved in this suit. Under a rather narrow view of 28 U.S.C. § 1655 some courts have held that the action is in rem and recovery could be satisfied only out of the property therein, and further the defendant should be allowed to defend on the merits as to the right of the plaintiff to such property, without submitting his rights to the court so as to warrant a personal judgment against him. McQuillen v. National Cash Register Co., 4 Cir., 1940, 112 F.2d 877; Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co., 6 Cir., 1922, 285 F. 214. Other courts have taken the position that if the defendant appears, specially or otherwise, the court may try the entire controversy, between the parties and enter an in personam judgment against the defendant which goes beyond the property that is the subject of the suit. Bede Steam Shipping Co. v. New York Trust Co., D.C.N.Y.1931, 54 F.2d 658; Campbell v. Murdock, D.C.Ohio 1950, 90 F.Supp. 297. At least two noted authorities have expressed an opinion that the latter view is the sounder view, 2 Moore's Federal Practice (2d Ed.), § 12.13, p. 2264; Blume, Actions Quasi in Rem under § 1655, Title 28 U.S.C., (1951), 50 Mich.L.R. 1, 22; and such view seems the more reasonable to this court. But even if the narrow view were controlling, the court does not interpret the cases supporting that view as precluding the entry of an in personam judgment which does not, in operation, extend beyond the property involved in the suit. Such a judgment would not alter the nature of the action from *in rem* to *in personam* but would merely give practical effect to the court's legal determination of the status of the property that is the subject matter of the action. This is in keeping with the intendment of Section 1655 of Title 28 U.S.C. and seems especially appropriate in the case now under consideration.

#### Evidence

■ 1. *Waiver of the Dead Man's Statute.* During the course of the trial Hannah Anderson was permitted, over objection of counsel, to give testimony relating to transactions and conversations with her deceased husband, Swen Anderson, through whom the defendants claim the property in suit. This testimony was received subject to the court's reservation of its ruling; and the court now passes upon whether the testimony should be considered in arriving at a decision.

The competency of a witness under Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A., is to be determined by that rule, State wherein the court sits, or Federal, whichever favors competency. The present status and exact limitations of the Federal rule relating to this issue are not easily described; however, it seems that there has never been a Federal rule admitting the testimony of a party in interest concerning transactions with a decedent whose representative is the adverse party. Wright v. Wilson, 3 Cir., 1946, 154 F.2d 616, 170 A.L.R. 1237; 5 Moore's Federal Practice (2d Ed.), § 43.06, p. 1331, note 8; 8 Cyclopedia of Federal Procedure (3rd Ed.), § 26.62, p. 77. The State law on the point has been incorporated in a statute. Section 25–1202, R.R.S. Neb.1943, provides:

"No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless the evidence of the deceased person shall have been taken and read in evidence by the adverse party in regard to such transaction or conversation, or unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation, in which case the person having such direct legal interest may be examined in regard to the facts testified to by such deceased person or such wit-

ness, but shall not be permitted to further testify in regard to such transaction or conversation."

In this case, both rules, State and Federal, give the defendant the right to have the testimony of Hannah Anderson concerning conversations and transactions with her deceased husband excluded; and unless this right has been waived the court would not be justified in considering her testimony relating to her agreement to execute joint and mutual wills with her husband.

Prior to trial in this case the defendants, pursuant to Rule 26, Federal Rules of Civil Procedure, 28 U.S.C.A., took the testimony of Hannah Anderson relating the same transactions and conversations with her husband which she testified to at the trial. The deposition was filed, but not offered in evidence, by defendants. Counsel for plaintiff contend that the taking and filing of this deposition constitutes a waiver of the benefits of the Nebraska "dead man's" statute.

The Nebraska statute provides that the testimony of the interested survivor may not be used unless the representative of the deceased shall have "introduced a witness who shall have testified in regard to such transaction or conversation". Sec. 25–1202, R.R.S.Neb. 1943. Although in some jurisdictions it has been held that the mere taking of a deposition constitutes a waiver of the "dead man's" statute,[1] it is difficult to interpret the mere taking of a deposition as a waiver in Nebraska because of the clear words of the statute. See Pospishil, The "Dead Man's Statute" in Nebraska, 31 Nebraska L.R. 1, 12 (note 72). The taking of a deposition does not seem to be tantamount to "introducing a witness" within the meaning of the statute when we consider the purpose and effect of the deposition-discovery procedure under the Federal Rules of Civil Procedure. The discovery procedure was designed to permit exploration—even fishing expeditions—to prevent surprize at the trial. 4 Moore's

Federal Practice, § 26.02, p. 1012 (2d Ed.). In view of the purpose underlying the discovery procedure, a liberal policy has developed whereby "either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 392, 91 L.Ed. 451. But the facts "disgorged" are not ipso facto evidence in the case. The rules themselves protect against such a result. Rule 26(e) provides that objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying unless the ground of the objection might have been removed if presented at the taking of the deposition; and Rule 26(f) provides in substance that a party shall not be deemed to make a person his own witness for any purpose by taking his deposition. Rule 26, Federal Rules of Civil Procedure, 28 U.S.C.A. The purpose of the first sentence of Rule 26(f) is to make it perfectly clear that by merely *taking* a deposition before trial a party does not impose restrictions upon himself with respect to the deponent at the actual trial. 4 Moore's Federal Practice (2nd Ed.), § 26.35, p. 1204. Considering this in relation to the principle that a deposition, taken and filed, but not offered at the trial, is not evidentiary support for the trial judge's decision, and is not part of the record for the appellate court's review, it becomes readily apparent that the taking and filing of a deposition pursuant to Rule 26, Federal Rules of Civil Procedure, 28 U.S.C.A. is not "introducing a witness" within the intendment of Section 25–1202, Reissue, Revised Statutes of Nebraska 1943. See Pink v. Dempsey, 1953, 350 Ill.App. 405, 113 N.E.2d 334; De Laurent v. Townsend, 1926, 243 N.Y. 130, 152 N.E. 699; Prince v. Abersold, 1931, 123 Ohio St. 464, 175 N.E. 862; Starkweather v. Conner, 1934, 44 Ariz. 369, 38 P.2d 311; Clayton v. Ogden State

---

1. Annotation: 64 A.L.R. 1148, 1165, supplemented in 107 A.L.R. 482, 491 and 159 A.L.R. 411, 422.

Bank, 1933, 82 Utah 564, 26 P.2d 545; Norman v. Kernan, 226 Wis. 78, 276 N. W. 127, cases which support in principle the foregoing conclusion. The wording of the "dead man's" statutes involved in the cases cited above varies slightly from the wording of the Nebraska statute but the variation does not, in the court's opinion, render those cases distinguishable from the case at bar.[2]

For the reasons stated the testimony of Hannah Anderson relating to transactions and conversations with her deceased husband is not properly admissible in this case and will not be considered by the court in determining and finding the facts here involved.

 2. *Confidential Communications between attorney and client.* During the course of the trial John A. Young, an attorney employed by both Swen Anderson and Hannah Anderson, was permitted, over objection of counsel, to give testimony relating to conversations had with both Swen and Hannah Anderson together and Swen Anderson alone. This testimony was also received subject to the court's reservation of its ruling, which it now makes.

A fair interpretation of Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as it relates to the admissibility of privileged communications between persons involved in a confidential relationship is this: a state statute, if there is one, should control

though it is more restrictive than federal precedents, but if there is no state statute and the Rule is doubtful as to the particular situation, the more liberal federal precedents may be followed. 8 Cyclopedia of Federal Procedure (3rd Ed.) § 26.31, p. 44; 5 Moore's Federal Practice (2nd Ed.) § 43.07, p. 1332; since there is, in this jurisdiction a state statute on the point, this court will adhere to it.

The statute provides:

"No practicing attorney * * * shall be allowed in giving testimony to disclose any confidential communication, properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Sec. 25–1206, R.R.S.Neb.1943.

The foregoing statute was not intended to prohibit the disclosure of all communications between an attorney and his client but only those which are *confidential* in nature. In Jenkins v. Jenkins, 151 Neb. 113, 36 N.W.2d 637, 643, Justice Messmore, speaking for the Nebraska Supreme Court, pointed out:

" 'When two or more persons employ or consult the same attorney in the same matter, communications made by them in relation thereto are not privileged inter sese. By selecting the same attorney, each

2. The statutory waiver provisions of the "dead man's" statutes in the jurisdictions from which the cases cited have been taken, are set forth below for comparison:

Arizona: "unless called to testify thereto by the opposite party or required to testify thereto by the court". Sec. 23–105, Arizona Code Annotated 1939.

Illinois: "unless when called as a witness by such adverse party so suing or defending". Illinois Revised Statutes 1951, § 2, Ch. 51.

Nebraska: "unless such representative shall have introduced a witness who shall have testified in regard to such transaction or conversation". Section 25–1202, R.R.S.Neb.1943.

New York: "except where the * * * administrator * * * is examined in

his own behalf, or the testimony of the lunatic or deceased person is given in evidence, concerning the same transaction or communication." Sec. 347, New York Civil Practices Act.

Utah: "unless such witness is called to testify thereto by such adverse party so claiming or opposing, suing or defending, in such action". Title 104, c. 24, Judicial Code Utah, ch. 24; 1951 c. 58, 104–24–2(3).

Wisconsin: unless such opposite party shall first be examined or some other witness in his behalf concerning the claim, or unless the testimony of the deceased person, given in his lifetime respecting the claim be first put in evidence by the opposite party. Wisconsin Statutes 1949, sec. 325.16.

party waives his right to place those communications under the shield of professional confidence. Either party may introduce testimony concerning the same as against the other, or his heirs or representatives. The reason assigned for the rule is that, as between the clients, communications made for the mutual benefit of all lack the element of confidentiality which is the basis of privileged communications. Ordinarily, the attorney for both parties is not the depositary of confidential communications from either party which ought to be withheld from the other. And this is usually the case even though the parties have adverse interests.' 58 Am.Jur., Witnesses, s. 496, p. 277. See, also, annotation in 141 A.L.R. pages 554, 555.

"It is sufficient to state that the testimony of an attorney as to a transaction in which two or more parties consult him, for their mutual benefit, is not privileged in an action between such parties or their representatives, involving such transaction. Communications made in the presence of others do not constitute a privileged communication. A confidential communication must necessarily be a secret one, and secrecy is enjoined, either actually or by implication. Such a communication is inherently private, and it is not intended or contemplated that it shall become known by others. See Crawford v. Raible, 206 Iowa 732, 221 N. W. 474.

"Where two or more persons employ the same attorney in the same business, their communications with the attorney in relation to the business are not privileged between themselves, even though their interests may be diverse, where the dis-

closures are made in the presence and hearing of all parties concerned, or are intended for the information of all parties. See, Lewis v. Beh, 206 Iowa 281, 218 N.W. 944, 220 N. W. 126; Wallace v. Wallace, 216 N. Y. 28, 109 N.E. 872; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 67 A.L.R. 489, 504."

It seems clear that the conversations of Swen and Hannah Anderson, with John A. Young, their attorney, relating to the transaction which is the basis of this suit were not privileged within the purview of Section 25–1206, R.R.S.Neb. 1943. The attorney for both parties is not, and ethically could not be, the depository of confidential communications from either party which ought to be withheld from the other. See also Nelson v. Glidewell, 155 Neb. 372, 51 N.W.2d 892; Adler & Sons Clothing Co. v. Hellman, 55 Neb. 266, 75 N.W. 877. Consequently the testimony of John A. Young concerning conversations with Swen and Hannah Anderson relating to the transaction in suit is admissible and will be considered by the court in determining and finding the facts here involved.[3]

### Findings of Fact

Having determined that jurisdiction of this action is vested in this court, and having considered generally what evidence may properly be relied upon in rendering a decision, the court, as provided in Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., makes the following special findings of fact:

Swen and Hannah Anderson were married in 1903. At this time they had only $200 apiece and lived for a while on a farm near Craig, Nebraska, with Hannah's parents for whom Swen worked. In 1904, they moved to a five-acre farm near Craig, which they occupied as tenants. Swen was working as a hired hand

---

3. Although the court need not determine whether Swen Anderson waived the privilege bestowed by Sec. 25–1206, R.R.S.Neb.1943, by having his attorney witness the will, an examination of Nebraska cases on the point indicates that if the will witnessed by the attorney is subsequently revoked there is no waiver. Lennox v. Anderson, 140 Neb. 748, 1 N. W.2d 912.

for $1 a day, and Hannah, when she could, would take in sewing and such work. In 1905, they moved to an eighty-acre farm which they occupied as tenants for three years. Then, in 1908, they purchased an eighty-acre farm near Lyons, Nebraska, by paying part of the purchase price with money from their spring crops and by giving a purchase money mortgage for the balance of the purchase price. In 1911, after making payments on the mortgage, they sold their equity in this farm and purchased another eighty-acre farm in Burt County, Nebraska, on which they lived until 1929, when they retired and moved to Omaha, Nebraska.

During the time that Hannah and Swen Anderson operated their own farm Hannah milked cows, fed hogs, horses and chickens, picked corn, took in sewing and boarders, and worked so vigorously in connection with the farming operations that neighbors often referred to her as "Swen's hired man." Swen and Hannah were frugal and during the course of years were able to pay off the mortgage on the farm purchased in 1911, put money in separate bank accounts, and invest money in real estate mortgages.

In the spring of 1929, they retired and moved to Omaha, Nebraska, where they purchased a home, taking title as joint tenants, at 3102 Decatur Street. In November of 1929, Hannah's mother passed away and Hannah inherited $2,000, which she used together with $2,000, belonging to both her and Swen, to purchase a house at 3103 Decatur Street in Omaha. Title to this house was taken in her name alone.[4]

On the first of October, 1931, Hannah Anderson held title to the following property in her own name: two notes, signed by Peter Gage, and secured by mortgages on his farm, in the sum of $2,700; a note to Minnie A. Nelson, secured by a mortgage, in the sum of $2,350; a joint interest in the house at 3102 Decatur Street in Omaha; and a fee interest in the house at 3103 Decatur Street, Omaha.[5]

On October 8, 1931, Swen and Hannah Anderson went together to the office of attorney John A. Young, in Lyons, Nebraska. At that time both Swen and Hannah Anderson were possessed of property in their own right and they had definitely made up their minds, and decided, to give their property one to the other. Swen, in Hannah's presence, advised attorney Young of this fact and asked him to draw wills to that effect.

The following will was prepared by Young for Swen Anderson:

"Last Will and Testament of Swen Anderson, Lyons, Nebr.

"I, Swen Anderson, of Omaha, Douglas County, Nebraska, do hereby make, publish and declare this my last will and testament in manner and form following, that is to say:

"First: I direct that my just debts be paid as soon after my decease as can conveniently be done.

"Second: I hereby revoke any former will or wills by me made.

"Third: I give, bequeath and devise to my wife, Hannah Anderson, all my property of every kind and description, both real and personal, and wheresoever situated, to be hers absolutely and forever.

"Fourth: I hereby appoint and constitute my said wife, Hannah Anderson, executrix of this my last will and testament.

"In Witness Whereof, I have hereunto affixed my signature this 8th

4. The foregoing findings were only made for introductory purposes and the court does not consider them essential to the decision. Consequently, particular care has not been taken to insure that these findings are not based in any degree whatsoever on the testimony of Hannah Anderson relating to transactions and conversations with her deceased husband.

5. This finding is made without reference to the testimony of Hannah Anderson relating to any transactions or conversations with her deceased husband.

day of October, 1931, at Lyons, Nebraska.

"We, whose names are hereunto subscribed do hereby certify that Swen Anderson, the testator, subscribed his name to this instrument in our presence, and in the presence of each of us, and declared at the same time, in our presence and hearing, that this instrument was his last will and testament, and we, at his request, sign our names hereto in his presence as witnesses.

Residing at Lyons, Nebraska.

Residing at Lyons, Nebraska."

Swen Anderson executed the foregoing will and John A. Young signed, together with his brother, Lawrence Young, as witnesses. This will was in all respects appropriately and validly executed.

Attorney Young prepared a will for Hannah Anderson which was identical to the will set forth above, except that the names of Swen and Hannah Anderson were interchanged. Hannah Anderson executed this will and John and Lawrence Young again signed as witnesses. Hannah's will was in all respects appropriately and validly executed. Both wills were executed the same day, October 8, 1931, and they were left with John Young for safekeeping.

Sometime in February of the following year Swen Anderson went to John Young's office and said that he wanted to change his will. He gave Mr. Young the necessary information relating to the changes and then left. Mr. Young prepared the new will in which he was named executor and by which Hannah was only to receive a life estate in Swen's property. Later Swen returned to execute it. After he had executed the new will, Swen Anderson was given the originals of the wills which both he

and Hannah had executed the preceding October. Although Mr. Young gave Hannah's will to Swen without Hannah's permission, and although he thought Swen was "pulling a fast one" on his wife, Mr. Young never advised his client, Hannah Anderson, that he had given her will to Swen Anderson; and it does not appear that Swen Anderson or anyone else advised her of this fact. The original will which she executed on October 8, 1931, was found after Swen Anderson's death in a safe deposit box in Swen's name in the Citizens State Bank of Decatur, Nebraska.

Peter Gage had borrowed money from the Andersons and had given as security three mortgages on an eighty-acre farm which he owned in Thurston County, Nebraska. In two of the mortgages, Hannah Anderson was named as mortgagee and in one Swen Anderson was named as mortgagee. During the 1930's Gage defaulted on the mortgages and in 1938 the Andersons decided to foreclose. Hannah Anderson assigned her mortgages to Swen so that all three mortgages could be foreclosed easily in the same transaction. At the foreclosure sale, Swen bid the property in and took a sheriff's deed naming him alone as grantee.

This property, to-wit:

"The East Half of the Southwest Quarter of Section 28, Township 24, Range 9, East of the 6th" P. M., in Thurston County, Nebraska,

was held by Swen Anderson in his own name until the date of his death and is now the subject of this litigation.

During the years 1941 through 1951, inclusive, Swen Anderson invested substantial sums of money in United States Savings Bonds, Series E. Only those bonds naming Swen Anderson as owner, and either his sister or one of her children as co-owner or beneficiary are still in issue in this case.[6]

6. Some of the defendants who were named as co-owners or beneficiaries on the bonds have filed voluntary appearances and disclaimers; consequently their claims, if any, are not in issue.

The respective rights of the interested persons under the terms of the bonds is set forth below:

posit was issued in his name. Swen took it and Hannah never saw it again until after his death.

| Name | Relationship | Legal Claim | Maturity Value |
|------|-------------|-------------|----------------|
| Anna Benson | Swen's Sister | Beneficiary | $ 800.00 |
| Leroy Benson | Swen's Nephew | Co-owner | 1,400.00 |
| | | Beneficiary | 2,500.00 |
| Mary Frances Benson | Swen's Niece | Co-owner | 925.00 |
| | | Beneficiary | 3,100.00 |
| Annabelle Lee Benson | Swen's Niece | Co-owner | 250.00 |
| | | Beneficiary | 4,275.00 |
| Lennea Josephine Benson | Swen's Niece | Co-owner | 900.00 |
| | | Beneficiary | 3,150.00 |
| Benjamin F. Benson | Swen's Nephew | Co-owner | 900.00 |
| | | Beneficiary | 2,475.00 |

These bonds were purchased by Swen Anderson with funds which he and Hannah had earned by their joint efforts. Hannah Anderson was not advised of their purchase by Swen who hid the bonds, as will be seen later, and who intended by the purchase to defraud his wife of rights she acquired by her oral agreement with Swen to make mutual and reciprocal wills.

In January of 1951, Henry Olsen offered to buy the eighty-acre farm in Burt County, Nebraska, which Swen and Hannah Anderson had purchased in 1911. Mr. Olsen made a down payment of $1,200, which was credited to Swen's account in the Citizens State Bank of Decatur, Nebraska. At this time title to the farm was in Swen's name, however, in order to convey good title both Swen and Hannah had to sign the deed of conveyance.[7] On March 2, 1951, Henry Olsen picked up the deed, signed by both Swen and Hannah, and left $10,000 with H. C. Larson, cashier of the bank. The next day Swen and Hannah Anderson went to the bank and were given a certificate of deposit for $10,000. At Swen's request the certificate of de-

On October 11, 1951, Swen Anderson executed a will at Oakland, Nebraska, which had been prepared by Maxwell Friis. This was the last will he executed prior to his death.

Swen Anderson died without issue on January 16, 1952.

Swen's funeral was held at Swaborg, Nebraska, where Hannah met Swen's brother Pete who informed her that he knew something she should know. Several days after the funeral Hannah called Henry Olsen, who lived near Pete, and asked him to bring Pete to Omaha. He did; and when they arrived Pete handed Hannah a letter which had been written by Swen in his own handwriting in Swedish. As translated by Rudolph Nelson the letter reads:

"If I should turn my legs in the air, then you should come down in the basement and in the oven door, and in the baking oven is some bonds and there is some papers also which nobody knows about and don't tell Hannah anything about it as long as she is sorrowing. Nobody shall know anything about

7. This legal conclusion is made at this point for two reasons:
 1) It is not likely to be disputed. See Sec. 30–101, R.R.S.Neb.1943; Moore v. Markel, 112 Neb. 743, 201 N.W. 147.
 2) It is an integral part of the finding of fact.

this. Hide this letter where you can find it."

The letter was unsigned and at the bottom of it there appeared a diagram of the oven door. Pete went to the basement, found the oven referred to in Swen's letter, and took the door apart by removing the screws which hold the inside door plate and the outer door covering together. In the insulating cavity between the metal plate and the door covering, he found a substantial number of United States Savings Bonds, Series E. These bonds, together with four bonds found in Swen's safety deposit box constitute all the bonds involved in this suit.

The will which Swen Anderson executed on October 11, 1951, was also found in the oven door. This will, which was duly admitted to probate on March 24, 1952, in the County Court of Douglas County, Nebraska, provides as follows:

"Last Will and Testament

"I, Swen Anderson, of 3103 Decatur Street, Omaha, Nebraska, being of sound mind and disposing memory, and not acting under any duress, menace, fraud or undue influence of any person whatsoever, do make, publish and declare this my Last Will and Testament, to-wit:

"First: I direct that my Executor hereinafter named, to pay all my just debts, expenses of last illness and burial fees first.

"Second: I give and devise to my wife Hannah Anderson the following described real estate, situate in the County of Thurston and State of Nebraska, to-wit:

"The East One-half of the Southwest Quarter (E½SW¼) of Section Twenty-eight (28), Township Twenty-four (24) North, Range Nine (9) East of the Sixth Principal Meridian;

to the use of my said wife for and during her natural life; and after the death of my said wife, I give and devise the said real estate, in fee simple title, share and share alike, to the children of my sister Mrs. Anna Benson, being Benjamin, nephew; LeRoy, nephew: Vivian, niece; Mary, niece; Linnea, niece; and Annabelle, niece.

"Third: I hereby give and bequeath unto my said wife, all my household goods, effects and personal property contained in our home in Omaha, Nebraska.

"Fourth: I hereby give and bequeath unto LeRoy Benson, my nephew, such automobile as I may own at the time of my death.

"Fifth: I have purposely omitted my brothers Nels Anderson, Alfred Anderson and August Anderson, all of Sweden, and my brother Peter Anderson of Burt County, Nebraska, from any part of this my Will.

"Sixth: From the rest, residue and remainder of my estate, I hereby give and bequeath to my said wife, the sum of Twenty Dollars ($20.00) per month from and after the date of my death, to the date of the death of my wife; and after the death of my wife, any residue remaining, I hereby give and bequeath to my nephews and nieces named herein in paragraph Second, share and share alike, in equal parts thereof.

"Seventh: I hereby name and appoint H. C. Larson of the Citizens State Bank of Decatur, Nebraska to be Executor of this my Will, hereby revoking all and any former Wills by me at any time heretofore made.

"In Witness Whereof, I have hereunto subscribed my name at Oakland, Nebraska, this 11th day of October, 1951.

"(Signed) Swen Anderson Testator.

"The foregoing instrument was at the date thereof, by Swen Anderson, Testator, signed in our presence and in the presence of each of us, and

at the time of his subscribing the same, he declared that it was his Will, and at his request and in the presence of each other and the testator, we have subscribed our names as attesting witnesses thereto.

"(Signed) Oscar D. Johnson

Oakland, Nebraska.

"(Signed) Maxwell Friis

Oakland, Nebraska."

On May 26, 1953, Hannah Anderson filed in the County Court, an election, pursuant to Secs. 30–107 et seq. R.R.S. Neb.1943, not to take under the terms of the foregoing will.

Hannah Anderson was never advised by her husband, and did not know prior to his death, that he had ever executed any will except the one executed in John Young's office on October 8, 1931. Hannah Anderson did not at any time take any action prior to Swen Anderson's death to revoke the will she executed in John Young's office on October 8, 1931.

In addition to the farm in Thurston County, Nebraska, the $10,000 certificate of deposit in the Citizens State Bank of Decatur and the United States Savings Bonds already mentioned, Swen Anderson owned at the date of his death a 1941 Studebaker Coupe and had on deposit $750 in the Citizens State Bank of Decatur, Nebraska. This constitutes all the property which is the subject of the suit, and of which the court has jurisdiction.

## Discussion

The evidence convinces the court that on or just prior to October 8, 1931, Swen and Hannah Anderson entered into an oral contract to make reciprocal wills and that on October 8, 1931, they executed reciprocal wills pursuant to their agreement. That there is ample evidentiary support for this conclusion, insofar as it is factual, seems clear from a reading of Mack v. Swanson, 140 Neb. 295, 299 N.W. 543. The same case demonstrates, that in this jurisdiction at least, the conclusion is legally sound. At page 297, of 140, Neb., at page 544 of 299 N.W., the learned Justice Rose comments:

"The question to be determined on appeal is the sufficiency of the evidence to prove an oral agreement by husband and wife to make reciprocal wills. After those instruments were duly and legally executed by both husband and wife without fraud of any kind, a prior oral contract to do so was provable without direct evidence. Both husband and wife were competent to make testamentary disposition of their property. What they in fact did in that particular is evidence of their previous mutual voluntary purpose. Circumstances may evidence a prior, oral agreement for reciprocal wills as well as direct testimony. What the husband willed to his wife was stated by him in his duly executed will as follows: 'I give, devise and bequeath to my beloved wife, Charlotte S. Mack, all of my property, real, personal and mixed, of whatever kind or nature, real estate, stocks and bonds, cash, automobile, and household furniture, to have and to hold during her life and should either of us pass away, whatever of the residue of all properties of every kind and nature shall revert to the heirs of both then living, share and share alike.'

"What the wife willed to her husband was stated by her in her duly executed and witnessed will as follows: 'I give, devise and bequeath to my beloved husband, William F. Mack, all of my property, real, personal and mixed, of whatever kind or nature, real estate, stocks and bonds, cash, automobile, and household furniture, to have and to hold during his life and should either of us pass away, whatever of the residue of all properties of every kind and nature shall revert to the heirs of both then living, share and share alike.'

"These wills were drawn at the same time, the only difference between them being changes in names and in references of each to the other. They were signed and witnessed by the same persons at the same time and place a few days after they were drawn. The witnesses to the wills certified that the husband declared in their presence and hearing that the instrument signed by him was his last will and testament and that his wife made a similar declaration. The executed wills were kept in a strong box accessible to both until after the death of the husband. The wills themselves, the definite purpose stated therein as to where the residue of the property of both should go upon the death of both and the surrounding circumstances, evidence a previous mutual agreement by husband and wife to make the irrevocable testamentary disposition of their property disclosed by the written instruments of identical import. Friends of William F. Mack testified he had at times expressed the purpose of himself and wife to make reciprocal wills, leaving the residue of their property upon the death of both to the heirs of both. The attorney who drew the reciprocal wills testified to the effect that William F. Mack and wife came to his office together; that the husband explained in the presence and hearing of the three of them the mutual plan to leave the residue of their property to the heirs of both, and that pursuant to directions he dictated the wills to a stenographer who read them to both husband and wife and that they both expressed satisfaction therewith. The evidence and circumstances summarized are uncontradicted. For the purposes of equity the oral agreement is fully established. For such purposes the oral agreement and the reciprocal wills should be treated as different parts of a single contract. The mutual promises of the parties amount to sufficient considerations. Performance of the oral contract by both parties during the remainder of the husband's life and the mutual writings pursuant to such oral contract clear the transactions from the statute of frauds."

The similarity between the factual situation involved in Mack v. Swanson, supra, and the case under consideration is readily apparent. The principles controlling in that case are controlling in this.

Since both Swen and Hannah Anderson executed written wills pursuant to their oral agreement and since Hannah Anderson fully performed her part of the agreement during Swen Anderson's life, she is entitled to specific performance of the contract and the statute of frauds is not a bar to relief. Brown v. Webster, 90 Neb. 591, 134 N.W. 185, 37 L.R.A.,N.S., 1196; Mack v. Swanson, 140 Neb. 295, 299 N.W. 543.

Counsel for the defendant argues that Hannah Anderson's election, filed in the probate court, not to take under the will of Swen Anderson which has been admitted to probate, is a waiver of her rights under the oral contract and that she is now estopped to claim under the contract. This election is not in any way inconsistent with Hannah Anderson's present claim. It has nothing to do with the validity or invalidity of the oral contract and cannot be considered as an abandonment of that contract. On the contrary, if she had failed to make the election within the time allowed, her failure would have been an election to take under the will, Sec. 30–108, R.R.S. Neb.1943, In re Coombs Estate, 117 Neb. 257, 220 N.W. 269, and such acquiescence in the will would be a much stronger indication that she had abandoned the oral contract. Under the circumstances the court is not inclined to view her conduct as a waiver of the contract or an abandonment of her rights thereunder. She has done nothing to estop her from seeking specific performance in this action.

Under the terms of the oral contract Hannah Anderson is entitled to all of

the property, and choses in action, belonging to Swen Anderson at the date of his death. This includes the bank deposits, real estate and automobile. In addition to this Hannah Anderson is entitled to all property which Swen Anderson conveyed, without consideration, to third persons with the intention of fraudulently defeating the rights of his wife derived from the terms of the contract. See 57 Am.Jur., Wills, § 57, p. 480. In this classification are the United States Savings Bonds, Series E. Using money which he and his wife had accumulated by their joint efforts, Swen Anderson purchased these bonds. He never advised his wife of the purchases and the place where the bonds were concealed at the time of his death indicates the surreptitious manner in which he was investing their money with the intention of defrauding his wife of rights arising out of the oral contract.

Counsel for the defendants contend under the Treasury Regulations the form of registration of these bonds is conclusive of ownership, 31 C.F.R. (1949 Ed.) 315.2 et seq., and that this court cannot enter an order affecting either the ownership of the bonds or the proceeds received therefrom. If counsel's construction of the regulations were accepted without qualification United States Savings Bonds would become the impenetrable sanctuary of ill-gotten gains and an excellent instrumentality for the perpetration of deliberate fraud. That Congress did not intend, in exercising its constitutional power to borrow money, to effect such a result is too clear to require discussion. See Ibey v. Ibey, 1945, 93 N.H. 434, 43 A.2d 157.

In this case Swen Anderson loaned money, which he and his wife Hannah had earned jointly, to the United States and in consideration of the loan the United States agreed to pay back the loan to Swen or to certain named beneficiaries. Hannah was not one of the named beneficiaries. Although Swen made the loans with the intention of defrauding his wife, the United States had no knowledge of, and certainly was not a party to, the fraud. Nor is the United States a party to this law suit. Consequently this court is not in a position to, nor would it, order the parties to request the United States to do other than what it agreed to do under the provisions of its contract, the terms of which are expressed in the bonds, and the statutes and regulations pursuant to which they were issued. However, the Government satisfies its obligation by paying the proceeds in accordance with the terms of its contract to the named beneficiaries. There is nothing in the laws or regulations which prevents this court from declaring a resulting trust in the proceeds of the bonds in order to prevent the perpetration of a fraud. See Rohn v. Kelley, 156 Neb. 463, 56 N.W.2d 711; Ibey v. Ibey, 1945, 93 N.H. 434, 43 A.2d 157; Katz v. Driscoll, 1948, 86 Cal.App.2d 313, 194 P.2d 822; Chase v. Leiter, 1950, 96 Cal.App.2d 439, 215 P.2d 756; Union National Bank v. Jessell, 1948, 358 Mo. 467, 215 S.W.2d 474. The beneficiaries should cash the bonds in keeping with the Laws and Regulations of the United States and pay the proceeds to Hannah Anderson.

In accordance with the conclusions expressed in this memorandum, counsel for the plaintiff shall prepare and submit for approval the appropriate judgment to be entered in this case.